Brian D. Shapiro, Esq.
Nevada Bar No. 5772
Law Office of Brian D. Shapiro, LLC
411 E. Bonneville, Suite 300
Las Vegas, Nevada 89101
Telephone (702) 386-8600
Facsimile (702) 383-0994
Email: mail@brianshapirolaw.com
Attorney for Stephen Beringer and Maria-Nicolle Beringer

E-filed: March 6, 2009

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.: BK-S-08-24236-BAM |
| FRANKLIN ANTHONY MITCHELL | Chapter 7 |
| Debtor. | |
| STEPHEN BERINGER and MARIA-NICOLLE BERINGER | ADV No. |
| Plaintiffs, | **COMPLAINT TO OBJECT TO DISCHARGE AND DETERMINE DISCHARGEABILITY OF A DEBT** |
| vs. | |
| FRANKLIN ANTHONY MITCHELL Defendant. | |

COMES NOW, Stephen Beringer and Maria-Nicolle Beringer (the "Plaintiffs"), by and through their attorney, Brian D. Shapiro, Esq., of the Law Office of Brian D. Shapiro, LLC hereby objects to the discharge of the Debtor under 11 USC 727, also seeks to have their debt deemed non dischargeable under 11 USC 523 and for this Court to determine the amount of the debt. Accordingly, the Plaintiffs allege as follows:

///

///

///

-1-

## PRELIMINARY STATEMENT

1.     Debtor FRANKLIN ANTHONY MITCHELL ("Defendant") filed a voluntary bankruptcy petition for relief under Chapter 7 of the United States Bankruptcy Code on November 26, 2008 ("the Bankruptcy Case") in the United States Bankruptcy Court, District of Nevada commencing case number 08-24236.

2.     The last day for filing complaints to determine the dischargeability of certain Defendant's debts under 11 USC 523 is March 6, 2009.

3.     This is a complaint objecting to the discharge of the Defendant based upon 11 USC 727(a)(3), and (a)(4).

4.     This is also a complaint seeking to determine that the debt owned by the Defendant to the Plaintiffs is not dischargeable under 11 USC 523(a)(2), 523(a) (4) and 523 (a)(6).

5.     This is also a complaint to determine the amount of the debt due and owing the Plaintiffs.

6.     This is a timely filed complaint.

## JURISDICTION

7.     Jurisdiction over this adversary proceeding is based on 28 USC 1334 and 157, Federal Rules of Bankruptcy Procedure 7001, 11 USC 105(a), 11 USC 523 and 11 USC 727.

8.     This adversary proceeding is a core proceeding pursuant to 28 USC 157(b) (2) (J) and (O).

## THE PARTIES

9. Plaintiffs are natural persons who maintain a residence in Summit County, Utah.

10. Defendant is a natural, adult individual who has listed his address HCR 38 Box 278, Mt. Charleston, Nevada 89124.

## ALLEGATIONS COMMON TO ALL COUNTS

11. Upon information and belief, Defendant is in the business of new residential home construction.

12. Upon information and belief, the Defendant, in July of 2007, worked as a framing supervisor at Christopher Homes near Park City, Utah.

13. As a result of Defendant's employment in Utah, Defendant, in or about July 2007, contacted a leasing agent in attempt to find a home for rent while residing and working in Utah.

14. On or about July 5, 2007, the Defendant filled out a financial application to rent real property of the Plaintiffs ("Financial Application").

15. A copy of the July 5, 2007 application is attached hereto as Exhibit 1.

16. On July 13, 2007, the Defendant entered into a Lease Agreement ("the Lease") where the Plaintiffs allowed Defendant to lease the Plaintiffs' home at Summit County, Utah ("the Property") from approximately July 12, 2007 until July 31, 2008 (the "Lease Term").

17. A copy of the Lease is attached hereto as Exhibit 2.

-3-

18.    In connection with the Financial Application, the Defendant represented to the Plaintiffs that (1) he had no debts, except a mortgage payment to Countrywide, and (2) Countrywide was Defendant's only creditor.

19.    Before the Plaintiffs agreed to lease the Property to Defendant, Defendant assured the Plaintiffs that, financially, Defendant was in excellent position to meet his rental obligations because (1) he was on per diem and his company in essence would be paying the rent to the Plaintiffs, (2) he was renting his Nevada Property and deriving income from it, and (3) he had no financial obligations, including child or spousal support, except his mortgage.

20.    Before execution of the Lease, Defendant represented himself to be a responsible individual, a homeowner, and an experienced, licensed residential contractor, sensitive to issues arising from maintaining a home.

21.    Defendant also represented that "his two boys" who worked with and for him and a fiancée would be the only other tenants living in the Property, and he would not sublet the premises or derive profit, even on a temporary basis.

22.    In entering into the Lease, the Plaintiffs materially relied on Defendant's representation, including Defendant's Financial Application.

23.    Defendant's Financial Application falsely stated that his only creditor was Countrywide.

24. Defendant failed to disclose in his Financial Application that he was obligated to pay the amount of $18,250.00 each year to his former wife.

25. A copy of the Defendant's Divorce Decree is attached hereto as Exhibit 3.

26. Based upon information and belief, the Defendant subleased the Property and earned income from the Property.

27. During the Lease Term, the Plaintiffs contacted the Defendant to inquire as to the status of the Property.

28. The Plaintiffs contacted the Defendant at least twice a month throughout the year to check on the Property.

29. Defendant affirmatively represented and continuously assured the Plaintiffs that no problems or issues existed and that he, being in the home construction business, was taking care of the Property as though it was his own.

30. On August 3, 2008, Plaintiffs regained possession of the Property.

31. Upon regaining possession of the Property, the Plaintiffs discovered that the Property was damaged.

32. Based upon information and belief, such damage was caused by the Defendant.

33. The damage to the Property included but was not limited to broken windows, broken doors, broken appliances, cut-out carpet, soaked with human and animal urine, shot-gun holes in the walls, a knife hole through the walls, punched fist holes through a certain interior door, painted graffiti on the walls and carved out squares of carpet throughout different areas of the Property.

-5-

34.    Plaintiffs' personal property located on the Property was also damaged.   Such damage included piercing of the Plaintiffs' oil paintings, allowing dogs' urine and feces on all furniture and mattresses; cracking in half the ping-pong table; destroying the air hockey game and the snow blower; inscribing permanently profanity on the surface of the pool table, cracking and water damaging the locked Petroff upright piano along with a large cigarette burn and an acid spot on the matching Petroff piano seat.

35.    Because of the Property's unlivable conditions, Plaintiffs were forced to reside for over four weeks with their neighbors.

36.    Upon regaining the Property, the Plaintiffs discovered that certain personal property was missing.   Such personal property includes but is not limited to the following:

Nevada Department of Public Safety flat wallet badge
10 Nevada Highway Patrol shoulder patches
50 ct box of Winchester 40 cal bullets and another 12 rounds
Over $300 worth of uncirculated commemorative state quarters
Over $20 worth of uncirculated new Jefferson nickels
A 2007 Burton snowboard
2007 Snowboarding boots
2 pairs of ski goggles
Philips 3 CD/Radio/Cassette Player
Various CDs
European Bedding and China
Nine pairs of European fine leather boots
2006 Rowenta German Iron
Two large floor water squeegees and a new snow shovel
Electric drill

Commercial grade mop bucket, wringer and mop
Hatchet with leather sheath
Various hand tools, wrenches, screw drivers and a hammer
Log splitting axe and two steel wedges

37.   Based upon information and belief, the Defendant removed the personal property described in paragraph 36 for his own personal use.

38.   As a substantial, direct, proximate and legal result of Defendant's acts of vandalism, theft and fraud, the Plaintiffs have been harmed in excess of $10,000.

39.    The Plaintiffs relied upon Defendant's initial and continuous representations about defendant's financial conditions and the conditions of the Property in (1) entering into the Lease with Defendant and (2) allowing the Defendant to reside in the Property for the Lease Term.

40.   Defendant's misrepresentations during the application process and in the Financial Application were material, and the Plaintiffs justifiably relied on them in agreeing to allow Defendant to lease and reside in the Property for the Lease Term.

41.   As a consequence of Defendant's material omissions, misrepresentations, and his acts of subletting and now claiming that he is financially unable to cover the losses from his own willful and malicious vandalism and theft, the Plaintiffs suffered substantial losses.

## FIRST CAUSE OF ACTION 727(a)(4)(A)
### False Oath

42.    The Plaintiffs incorporate by reference paragraphs 1-41 of this Complaint as if fully set forth and restated herein.

43.    Defendant knew at the time he filed his petition he had received income from (1) subletting to at least 12 unauthorized individuals the Plaintiffs' Property during the Lease Term and (2) renting his own Nevada Property at least until January 3, 2009.

44.    The Defendant's Bankruptcy Schedules were signed under penalty of perjury.

45.    Defendant intentionally failed to list under Schedule I, line 8, the amounts of any such rental income with the bankruptcy court.

46.    The Defendant testified under oath during the meeting of creditors.

47.    The Defendant testified falsely during the meeting of creditors.

48.    The Defendant knowingly and fraudulently, in connection with his case, made a false oath in that (1) Defendant intentionally failed to disclose in his petition, schedules and statements of financial affairs, filed on November 26, 2008 the income received from subletting the Plaintiffs' Property during the Lease Term and renting his own Nevada Property, and (2) Defendant fraudulently testified under oath during two separate creditors' meetings before the trustee that he had not received any rental income.

49.    The Defendant is not entitled to a discharge under 11 USC 727(a)(4)(A).

## SECOND CAUSE OF ACTION 727(a)(3)
### Failure to Maintain Records

50.   The Plaintiffs incorporate by reference paragraphs 1-49 of this Complaint as if fully set forth and restated herein.

51.   Based upon information and belief, the Defendant has failed to keep or preserve books and records from which his financial condition and business transactions may be ascertained, in that he has received various sums of money from unauthorized tenants on the Property and his own Real Property.

52.   Based upon 11 USC 727(a)(3), Defendant's discharge should be denied.

## THIRD CAUSE OF ACTION 523(a)(2)(A)
### False Representation and Fraud

53.   The Plaintiffs incorporate by reference paragraphs 1-52 of this Complaint as if fully set forth and restated herein.

54.   To secure the Plaintiffs' signatures to the Lease, and thereby reside in the Property and sublet to profit for the Lease Term, Defendant made various false and fraudulent representations and omitted to state material facts, as set forth above.

55.   Defendant knew that the representations were false at the time he made them and knew that he had omitted to state material facts or acted with reckless disregard for the truth.

56.   Defendant made the false and fraudulent representations and omitted to state material facts to induce the Plaintiffs to sign the Lease and to allow Defendant to reside in the Property for the Lease Term and to profit from subletting.

57.   Defendant's credit report did not and would not have shown amounts owed under a settlement agreement, and the Plaintiffs could not have assessed Defendant's subjective intent to profit from subletting.

58.   The Plaintiffs justifiably relied to their detriment on the false representations and omissions in signing the Lease and allowing Defendant to reside in the Property for the Lease Term.

59.   The Plaintiffs would not have agreed to the Lease or allowed Defendant to reside in the Property if Defendant had stated he intended to sublet and derive profit from the Property.

60.   The Plaintiffs would not have agreed to the Lease if the Defendant had disclosed his substantial settlement debt to his former-wife.

61.   The Plaintiffs suffered monetary damages as a result of Defendant's false representations, omissions and actual fraud.

62.   Based upon 11 USC 523 (a)(2)(A), the Debtor's discharge should be denied.

## FOURTH CAUSE OF ACTION 523(a)(2)(B)

### Writing with Material Omission

63.   The Plaintiffs incorporate by reference paragraphs 1-62 of this Complaint as if fully set forth and restated herein.

64.   To obtain the Plaintiffs' signatures to the Lease and thereby reside on and derive income from the Property, Defendant failed to disclose material information regarding his financial obligations in his Financial Application.

65.   The omissions consisted of intentionally failing to disclose the debt in the amount of $18,250 per year to Defendant's former wife.

66.   The omission was material because it prevented the Plaintiffs from accurately assessing Defendant's ability to meet his obligations under the Lease.

67.   Defendant knew of his non-disclosed debt obligations but failed to disclose them in order to induce the Plaintiffs into signing the Lease.

68.   The Plaintiffs justifiably relied on the false misrepresentations in the form of omissions in entering into the Lease and allowing Defendant to reside in the Property.

69.   The Plaintiffs suffered monitory damages as a result of Defendant's omissions concerning his financial conditions.

70.   Based upon 11 USC 523 (a)(2)(B), the Debtor's discharge should be denied.

## FIFTH CAUSE OF ACTION 523(a)(4)
### Larceny and Embezzlement

71.   The Plaintiffs incorporate by reference paragraphs 1-70 of this Complaint as if fully set forth and restated herein.

72.   Defendant committed larceny when he wrongfully and with fraudulent intent took for his own use, without permission, the Plaintiffs' personal property from an area designated solely for the Plaintiffs.

73.   Despite the Plaintiffs' demands, Defendant failed and refused to return said stolen property to Plaintiffs, and converted the property to his own use.

74.   Additionally, Defendant committed embezzlement when the Plaintiffs—the owners of the Property—entrusted the Property to the Defendant for the Lease Term, and Defendant fraudulently, without disclosing to the Plaintiffs, appropriated the Property to a use other than that for which it was entrusted.

75.   Defendant wrongfully profited by appropriating the funds from subletting for his own benefit and Defendant did so with fraudulent intent to deceive the Plaintiffs.

76.   As a result of Defendant's actions of larceny and embezzlement, Defendant's debt to the Plaintiffs is nondischargeable and based upon 11 USC 523 (a)(4), the Debtor's discharge should be denied.

## SIXTH CAUSE OF ACTION 11 USC 523(a)(6)
### Willful and Malicious Conduct

77.   The Plaintiffs incorporate by reference paragraphs 1-76 of this Complaint as if fully set forth and restated herein.

78.   Defendant caused vandalism, loss and conversion to Plaintiffs' personal and real Property.

79.   The acts, as described in this Complaint were all actions of Defendant's willful and malicious conduct.

80.   Defendant's actions of depriving the Plaintiffs from their personal Property by appropriating it for Defendant's own use were also willful and malicious and caused injury to the Plaintiffs.

-12-

81.  As a result of Defendant's actions of larceny and embezzlement, Defendant's debt to the Plaintiffs is nondischargeable and based upon 11 USC 523 (a)(6), the Debtor's discharge should be denied.

### SEVENTH CAUSE OF ACTION

### Request for Monetary Award

82.  The Plaintiffs incorporate by reference paragraphs 1-81 of this Complaint as if fully set forth and restated herein.

83.  The Plaintiffs have been damaged in excess of $10,000.00 by the wrongful acts of the Defendant as indicated herein.

84.  The Plaintiffs have been damaged in excess of $10,000.00 by the Defendant breaching his obligation under the lease agreement.

85.  The Plaintiffs are entitled to punitive damages as a result of the Defendant's intentional acts of destruction to the Property and personal property of the Plaintiffs.

WHEREFORE, Plaintiff prays for Judgment as follows:

1.  Pursuant to its First through Second Claim for Relief under 11 USC 727, deny the Debtor a discharge and award costs, attorney fees and such other relief as the court may find to be just and proper.

2.  Alternatively, pursuant to its Third through Sixth Claim for Relief, for a determination that the Plaintiffs' claim is not dischargeable pursuant to 11 USC 523 and award costs, attorney fees and such other relief as the court may find to be just and proper.

3.    Pursuant to its Seventh Claim for Relief, for damages in excess of $10,000.00,

prejudgment interest, award of costs, attorney fees, punitive damages and such

other relief as the court may find to be just and proper.

Dated  3-6-0⟨

Brian D. Shapiro, Esq.

Attorney for Stephen Beringer and Maria-
Nicolle Beringer

-14-

# EXHIBIT 1

Rm 319 - Best Western - Cancymark

Cell # 702-210-9742

## APPLICATION TO RENT

(all sections must be completed)     individual applications required from each adult occupant.

| LAST NAME Mitchell | FIRST NAME Franklin | MIDDLE NAME Anthony | SC | | 60 |
|---|---|---|---|---|---|
| DATE OF BIRTH 12-18-58 | DRIVER'S LICENSE NO. 1401228206 | STATE Nev | HOME PHONE NUMBER 702 872 0760 | | |

Complete Section 2 and 3 if you have lived at address Number 1 for less than 5 years.

**1**
| PRESENT ADDRESS Mt. Charleston | CITY Nevada | STATE 89124 ZIP |
|---|---|---|
| DATE IN 1999 | DATE OUT Still in | OWNER/MGR. NAME | OWNER/MGR. PH. NO. |
| REASON FOR MOVING WORK | | |

**2**
| PREVIOUS ADDRESS | CITY | STATE ZIP |
|---|---|---|
| DATE IN | DATE OUT | OWNER/MGR. NAME | OWNER/MGR. PH. NO. |
| REASON FOR MOVING | | |

**3**
| NEXT PREVIOUS ADDRESS | CITY | STATE ZIP |
|---|---|---|
| DATE IN | DATE OUT | OWNER/MGR. NAME | OWNER/MGR. PH. NO. |
| REASON FOR MOVING | | |

Yellow pine mill

| NAME & AGE OF OTHER OCCUPANTS | AGE | NAME | DATE OF BIRTH | SOCIAL SECURITY NO. | DRIVERS LICENSE NO. |
|---|---|---|---|---|---|
| | | ALAN | | | |
| | | DAVID HANSEN | | | |
| | | TONYA | | | |

| WILL YOU HAVE PETS? YES | DESCRIBE 2 - Golden Ret | WILL YOU HAVE WATERBED? NO | DESCRIBE |
|---|---|---|---|

Complete Section B only if you have been with present employer for last than 5 years.

**A.**
| PRESENT OCCUPATION Supervisor Framing | EMPLOYER NAME NEISTAR + Associates Inc |
|---|---|
| HOW LONG WITH THIS EMPLOYER? 15 YEARS | EMPLOYER ADDRESS 18907 NORDhoff St Suite |
| NAME OF YOUR SUPERVISOR JIM STARKS | EMPLOYER PHONE NO. 1 818 725 0084 |

**B.**
| PRIOR OCCUPATION | EMPLOYER NAME |
|---|---|
| HOW LONG WITH THIS EMPLOYER? | EMPLOYER ADDRESS |
| NAME OF YOUR SUPERVISOR | EMPLOYER PHONE NO. |

Northridge Ca
91324

| CURRENT GROSS INCOME | CHECK ON | | | |
|---|---|---|---|---|
| $ 1,400 PER | WEEK | MON. | YR. X | + Boxuses |

PLEASE LIST ALL OF YOUR FINANCIAL OBLIGATIONS BELOW

| NAME OF YOUR BANK Citi bank | BRANCH OR ADDRESS Rainbow Blvd L.V. Nev | ACCOUNT NUMBER CHECKING/SAVINGS 400 9649 9391 |
|---|---|---|

| NAME OF CREDITOR | ADDRESS | PHONE NO. | MO. PYMT. AMT. |
|---|---|---|---|
| Country wide | | | 2400 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| In case of emergency, notify: | Address | Phone | City | Relationship |
|---|---|---|---|---|
| 1. Alivia Mitchell | 3851 N. Gold St | 505 388 2018 | Silver City NM | Mom |
| 2. | | | | |

| Personal Reference | Address | Phone | Length of Acquaintance | Occupation |
|---|---|---|---|---|
| 1. Doug HARkates | Mt. Charleston | 702 872 0843 | 8 yrs | Retired |
| 2. JIM STARKS | Las Vegas Nev | 702 493 4295 | 15 yrs | Boss |

Automobile - Make FORD Model 7250 4X4 Year 2005 License Number [illegible] Owns company F-150
Automobile - Make _____ Model _____ Year _____ License Number _____
Motorcycles (other vehicles) _____
Have you ever filed for bankruptcy? NO Have you ever been evicted or asked to move? NO

Applicant represents that all of the above statements are true and correct and hereby authorizes verification of the above items including but not limited to the obtaining of credit report and agrees to furnish additional credit references on request.

The undersigned makes application to rent housing accommodations designated as:

Apt. No. _____ Located at 90 MATTERHORN     pd 7/13/07

the rental for which is $ 2700 per MO. and upon approval of this application agrees to sign a rental or lease agreement and to pay all sums due, including required deposits, before occupancy. Application Fee $ 25.00. This fee is non-refundable.

Dated JULY 5TH 20 07     [signature] Frank Mitchell     Applicant
Dated _____ 20 _____     Applicant

UNAUTHORIZED REPRODUCTION OF THIS FORM IS ILLEGAL.

# EXHIBIT 2

# RENTAL AGREEMENT

Received from ___**Franklin Mitchell**___, lessee, hereinafter referred to as Resident, the sum of **Eight thousand two hundred and no/xx**
DOLLARS (**$ 8200.00** ) evidenced by [ ] Cash [ X ] Check, as a deposit which, upon acceptance of this rental agreement, shall belong to the
Lessor of the premises, hereinafter referred to as Owner, and shall be applied as follows:

|  |  | Received | Payable prior to Occupancy |
|---|---|---|---|
| Rent for the period from ___July 12, 2007___ to ___July 31, 2007___ (Pro-rate to end of month) | | $ 1800.00 | $1800.00 |
| | Last month's rent $ 2700.00 | $ 2700.00 | $2700.00 |
| | Security Deposit $ 2700.00 | $ 2700.00 | $2700.00 |
| Refundable Portion $ 2700.00 Non Refundable Portion $_____ | | | |
| Other ___Pet Deposit___ (specify, i.e., Pet, etc.) | $1000.00 | $ 1000.00 | $1000.00 |
| | TOTAL: | $ 8200.00 | $8200.00 |

f this agreement is not accepted by the Owner or his agent, within five (5) days, the total deposit received shall be refunded. Resident agrees to
ent from the Owner the premises situated in Park City, Summit County, State of Utah, located at:__ **90 Matterhorn Drive**___ consisting of
**6 bedrooms, 2.5 baths, furnished home and 2 car garage** upon the following terms and conditions.
(description of unit, i.e. 2 bedroom, 1 bath and garage)

TERM OF AGREEMENT: The term of this agreement shall commence on ___**July 12, 2007**___, and end on ___July 31, 2008, unless terminated
sooner as herein provided.

RENT: Rent shall be $ **2700.00** per month, payable in advance upon the 1st day of each calendar month to Maria-Nicolle Beringer, 61
Griswold Street, Cambridge, MA 02138. If rent is not paid within five (5) days after due date, Resident agrees to pay a late charge of $100.00.
n the event of a dishonored rent check, Resident agrees to, within twenty-four (24) hours of a dishonor, replace said check with certified funds and
ay a $25.00 dishonored check fee. If check is dishonored, the Owner may require Resident to make all future payments with cash or cashier's
heck, and Owner will provide receipt for all such payments. If the dishonored check occurs after the 5th of the month, the late fee will also apply.

ECURITY DEPOSIT: The Security Deposit set forth above shall secure the performance of Resident's obligations. Refund of Security Deposit
s dependent upon Resident fulfilling ALL of the following conditions:
       1.   Resident has provided a written thirty (30) day notice to Owner prior to the date of termination or expiration.
       2.   Resident has no other monies due.
       3.   Resident has neatly patched all holes in walls from pictures, etc., and has thoroughly cleaned the premises, appliances,
           fixtures, windows, walls, window coverings, woodwork and floors (including carpet). The Owner will deduct from the
           security deposit all reasonable charges to accomplish cleaning or repair from damage over normal wear and tear.
       4.   All individuals using or occupying the premises have surrendered the premises to Owner, and all keys to the
           premises, mailbox or storage rooms are turned in to the Owner.
RESIDENT SHALL NOT HAVE THE RIGHT TO APPLY SECURITY DEPOSIT TOWARD PAYMENT OF RENT.

MULTIPLE OCCUPANCY: It is expressly understood that this agreement is between the Owner and all signatories, jointly and severally. In the
vent of default each and every signatory shall be responsible for timely payment of rent and all other provisions of this agreement.

UTILITIES: Resident shall be responsible for the following utilities and services: [ X ] Water [ X ] Sewer [ X ] Electricity [ X ] Gas [ X ] Lawn
are [ X ] Snow removal on deck & patio [ X ] Phone [ X ] Cable T.V. [ X ] Hot tub care and chemicals

USE: The premises shall be used as a residence by the undersigned adults and ___-0-___ children, and for no other purpose without the prior written consent of the Owner. Occupancy by guests staying over 7 days will be considered to be in violation of this provision unless prior written consent is given by the Owner.

INVENTORY: The following furnishings and inventory are part of this agreement. Gas cook top, wall oven, microwave, range, two refrigerators, dishwasher, trash compactor, disposal, washer, dryer, window coverings, furnishings as inventoried by Owner, garage door opener with two transmitters and 4 house keys.

TERMS AND CONDITIONS:

1) No smoking is allowed inside the property.
2) Resident is allowed to have 3 roommates.
3) Resident is allowed to have two dogs. Resident must clean up all dog feces on a regular basis. Any and all damage to the interior or exterior of the property shall be the sole responsibility of the Residents to remedy or repair. The carpets must be professionally cleaned after vacating the premises or the cost to do so will be deducted from the Pet Deposit. If the amount of the Pet Deposit is insufficient to cover the cost of carpet cleaning and repairs due to pet damage, the balance shall be taken from the Security Deposit.
4) On or about July 21, 2007, Owner will remove and replace the king mattress in the master bedroom, place an upright piano in the living room as part of the inventory and remove the Subaru parked in the garage.
5) Owner may leave a few personal items, such as skis, etc. in a designated area in the house.
6) Resident must remove water and melted snow from the garage floor with a squeegee to avoid water buildup and its entry into the house.
7) The Owner currently has an extended coverage home warranty policy that covers many repairs to the house and appliances. Owner will provide Resident with the home warranty information and policy number. Resident agrees to schedule covered repairs with the home warranty company and pay the deductible of approximately $55.00 for each covered repair. Owner agrees to reimburse Resident for any deductible paid for by Resident unless the repair is due to Resident's negligence.
8) Unless this agreement is extended after the initial term, Owner may list the property for sale or lease during the last sixty (60) days of Resident's occupancy.
9) Cathy and Randy Schwalbe are neighbors and local contacts of the Owner's. In case of emergency, they can be reached at 435-604-0485 or 435-602-9336.

HOUSE RULES: Resident, guests and other occupants agree to abide by all house rules that may be attached and made a part of this agreement, including but not limited to rules with respect to noise, odors, disposal of refuse, pets, parking, and use of common areas. Resident understands that all guests and occupants are bound by this agreement.

ORDINANCES AND STATUTES: Resident shall comply with all laws, health codes, and regulations of all municipal, state and federal authorities.

ASSIGNMENT AND SUBLETTING: Resident shall not assign this agreement, sublet any portion of the premises or derive profit from renting the property or any portion thereof even on a temporary basis without prior written consent of the Owner.

MAINTENANCE, REPAIRS OR ALTERATIONS: Resident accepts the premises as being in good order and repair, unless otherwise indicated in writing. Resident shall, at his own expense, maintain the premises in a clean and sanitary manner, including all equipment, appliances, furniture and furnishings therein, and shall surrender the same, at termination, in as good condition as received, normal wear and tear excepted. Resident shall be responsible for all repairs required for damages caused by his negligence and that of his guests, or other occupants. Resident shall not paint, or other otherwise redecorate or make alterations to the premises without the prior written consent of the Owner, Resident will not remove Owner's fixtures, furniture and/or furnishings from the premises, for any purpose. When Resident moves in, Owner shall furnish light bulbs of prescribed wattage for the property's sockets. Thereafter, light bulbs will be replaced at Resident's expense. Resident is responsible for changing furnace filters and lighting pilot lights.

2

ENTRY AND INSPECTION: Resident shall permit Owner or Owner's agents to enter the premises at reasonable times and upon reasonable notice for the purpose of inspecting the premises or showing the same to prospective Residents or Purchasers or for making necessary repairs. In case of emergency no notice need be given.

POSSESSION: If Owner is unable to deliver possession of the premises as agreed, Owner shall not be liable for any damage caused. Resident may terminate this agreement if possession is not delivered as agreed above.

ATTORNEY'S FEES: If legal action is taken by either party to enforce this agreement, or to enforce any rights arising out of the breach of this agreement or to evict Resident, guests, or other occupants, the prevailing party shall be entitled to all costs incurred in connection with such action including a reasonable attorney's fee and collection costs, with or without suit.

WAIVER: No failure of Owner to enforce any part of this agreement shall be deemed as a waiver, nor shall any acceptance of a partial payment of rent be deemed a waiver of Owner's right to full amount.

NOTICES: All notices shall be given in accordance with state laws. Where requirements are not spelled out by law, notice may be given by mailing the same, postage prepaid, to Resident at the premises or to Owner at the address shown below or at such other places as may be designated.

REIMBURSEMENT BY RESIDENT: Resident agrees to reimburse Owner promptly for the replacement costs of any loss, property damage, cost of repairs or service (including plumbing trouble) caused by negligence or improper use by Resident, his agents, family or guests. Resident shall be responsible for damage from windows or doors left open. Such reimbursement is due when Owner makes demand. Owner's failure to demand damage reimbursement, late-payment charges, returned check charges or other sums due by Resident, shall not be deemed a waiver and Owner may demand same at any time, including after move-out.

OWNER SHALL NOT BE LIABLE: Owner shall not be liable for any damages or losses to person or property caused by other residents or other persons. Owner shall not be liable for personal injury or damage or loss of Resident's personal property (furniture, jewelry, clothing, etc.) from theft, vandalism, fire, water, rain, hail, smoke, explosions, sonic booms or other causes whatsoever, unless the same is due to the negligence of Owner. Owner strongly recommends that Resident secure insurance to protect himself against the above occurrences. Owner or his agents will not render any services such as moving automobiles, handling of furniture, cleaning, delivering packages, or any other service not contemplated in this contract.

REPAIRS AND MALFUNCTIONS: RESIDENT AGREES TO REQUEST ALL REPAIRS AND SERVICES IN WRITING TO OWNER, except in extreme emergency when telephone calls will be accepted. In case of malfunction of equipment or utilities, or damage by fire, water, or other cause, Resident shall notify Owner immediately, and Owner shall act with due diligence in making repairs and RENT SHALL NOT ABATE DURING SUCH PERIOD. If the damaged premises are unfit for occupancy, Owner shall within reasonable time in writing inform Resident whether he intends to terminate the contract or repair said premises. If Owner elects to repair the premises, said repairs shall be undertaken with due diligence. If terminated, rent will be prorated and the balance refunded along with the deposit(s), less lawful deductions.

DEFAULT BY OWNER: Owner agrees to (a) keep all areas of the property in a reasonably clean condition; (b) properly maintain water, heating, plumbing, electrical service and/or air conditioning equipment, if provided; (c) abide by applicable state and local laws regarding repair; (d) make reasonable repairs, subject to Resident's obligation to pay for damages caused by Resident, or other occupants.

DEFAULT BY RESIDENT: Owner may, upon written notice, terminate Resident's right to occupancy if any of the following conditions occur:
1. Resident fails to pay rent or other lawful charges when due.
2. Resident fails to reimburse Owner for damages, repairs or plumbing service costs when due.
3. Resident, guests or other occupants violate this contract, Owner's rules and regulations, or applicable state and local laws.
4. Resident abandons the premises.
5. Resident, guests, or other occupants threaten or use abusive or offensive language against another resident, or any agent, employee, or representative of Owner.

3

ABANDONMENT: Abandonment shall have occurred if, (1) without notifying the Owner, Resident is absent from the premises for 15 days while rent is due and Resident's possessions remain on the premises, or (2) without notifying the Owner, Resident is absent for 1 day while rent is due if Resident's possessions have been removed from the premises. If Resident abandons premises, Owner may re-take premises and attempt to rent it at fair market value. Resident shall be liable for the entire rent due for the remainder of the term, or the cost of re-renting the premises, including rent lost, the cost of restoring the premises to the condition at the time it was rented, and reasonable fees for re-renting the premises. If Resident has left personal property on the premises, Owner may remove it and store it and attempt to give Resident notice of this action. Resident may obtain property by paying moving and storage costs. If Resident fails to claim property within 30 days of notice, Owner may make a reasonable effort to sell the property at its fair market value and apply the proceeds toward any amount the Resident may owe. Any money remaining after such action shall be disposed of in accordance with UCA-78-44-11.

TIME: Time is of the essence for this agreement.

AGENCY DISCLOSURE: At the signing of this Agreement the undersigned Resident understands that Coalition Management, L.C. represents the Owner of this rental for the sole purpose of procuring a tenant for the Property. This Property is managed by the Owner. Coalition Management, L.C. has no responsibility for management of this Property.

ENTIRE AGREEMENT: This form constitutes the entire agreement made between the parties and may be modified only by a writing signed by both parties. The following exhibits, if any, have been made a part of this agreement:

[X] Application to Rent, [X] Utility Sign Up Sheet, [X] Inspection List, [ ] HOA Rules

Date    7-13-07

The undersigned Owner or Agent accepts this agreement.

The undersigned Resident acknowledges receipt of a copy hereof and accepts this agreement.

_____ Resident

_____ Social Security No

Owner's Agent:    COALITION MANAGEMENT, L.C.
Address:    1912 Sidewinder Drive, Suite 200 B
             Park City, Utah 84060
Phone:    435-649-4994

_____ Resident

_____ Social Security No

By _____

All future correspondence shall be directed to:

Name:    Maria-Nicolle Beringer
Address:    61 Griswold Street
             Cambridge, MA 02138
Cellular Phone:    702-767-7172
E-mail Address:    mberinger@llm08.law.harvard.edu

# EXHIBIT 3

ORIGINAL

1  DECD
   FRANKLIN A. MITCHELL
2  HC 38 Box 278
   Mt. Charleston, Nevada 89124
3  (702) 872-0786
   Plaintiff in Proper Person
4

FILED

Mar 1  2 12 PH '06

CLERK

5                            DISTRICT COURT

6                         CLARK COUNTY, NEVADA

7

8

9   FRANKLIN A. MITCHELL,                    CASE NO: D350078
                                             DEPT NO:    G
10
                     Plaintiff,
11                                           DATE OF HEARING: N/A
         vs.                                 TIME OF HEARING: N/A
12
13  TRACEY L. MITCHELL
14                   Defendant.

15                         DECREE OF DIVORCE

16      Plaintiff, Franklin A. Mitchell, representing himself in proper person, and Defendant, Tracey

17  L. Mitchell, representing herself in proper person, submitted this matter to the Court for Summary

18  Disposition of Divorce, and both parties having consented to this Court's jurisdiction. The Court

19  was fully advised as to the law and the facts of the case, and finds that: the parties were married on

20  January 21, 2000, in Las Vegas, Nevada; there are no minor children the issue of the marriage; there

21  were no children adopted by the parties and the Defendant is not pregnant; this Court has complete

22  jurisdiction in the premises. both as to the subject matter, as well as the parties; the Plaintiff is an

23  actual and bona fide resident of the County of Clark, State of Nevada, and was actually domiciled

24  herein for more than six weeks immediately preceding the commencement of this action; all of the

25  jurisdictional allegations contained in Plaintiff's Complaint are true as therein alleged and Plaintiff

    is entitled to a Decree of Divorce from the Defendant on the ground as set forth in Plaintiff's

28

RECEIVED
FEB 14 2006

RECEIVED

MAR 0 1 2006                          SE50
COUNTY CLERK

1    Complaint; and Defendant having answered has waived Findings of Fact, Conclusions of Law, and

2    written Notice of Entry of Decree of Divorce in said cause;

3          **NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**

4    that the bonds of matrimony existing between Plaintiff, Franklin A. Mitchell ("Frank"), and

5    Defendant, Tracey L. Mitchell ("Tracey"), be, and the same are wholly dissolved, and an absolute

6    Decree of Divorce is hereby granted to Frank, and each of the parties is restored to the status of a

7    single, unmarried person.

8                     **DIVISION OF PROPERTY**

9        IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Frank is awarded the

10    following, as his sole and separate property:

11        1.      The home and real property located at 6 Yellow Pine Avenue, Mt. Charleston, Nevada

12    89124, APN: 129-36-510-009, having the following legal description:

13       That portion of the North Half (N 1/2) of Section 36, Township 19 South, Range 56 East, M.D.B. &
14       M., described as follows:

15       COMMENCING at a 3/4 inch iron pipe set in a concrete block, known as Alpha Monument, which
        point of South 9°59' West, 573.65 feet from the North quarter corner of said Section 36, thence South
16      82°39' East, 398.16 feet to the true point of beginning; thence continuing South 82°39' East, a
        distance of 50 feet to a point; thence North 7°21' East 50 feet to a point; thence North 82°59' West
17      to a point which is North 7°21' East from the true point of beginning; thence South 7°21' West 50 feet
        to the POINT OF BEGINNING. (Lot Six (6) Group One (1) of unrecorded map of Charleston Park
18      Resort.

19       2.      The 2005 Ford F250 Superduty, VIN: 1FTSW21P05EC24006.

20       3.      The 2002 Ford F250 Superduty, VIN: 1FTNX21F22EA07148.

21       4.      The Citibank Checking Account No. 892407XXXX.

22       5.      The Citibank Savings Account No. 892012XXXX.

23       6.      The Citibank Saving Account No. 884007XXXX.

24       7.      The Indy Mack Checking Account No. 291702XXXX.

25       8.      All bank accounts titled in his name only.

26       9.      All personal possessions, household furniture and furnishings currently in his

27    possession.

28                             Page 2 of 7

1    IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Tracey is awarded

2    the following, as her sole and separate property:

3        1.    The 2000 Ford Expedition, VIN: 1FMPU 16LXYLA53643

4        2.    Her Public Employees Retirement System benefits.

5        3.    All bank accounts titled in her name only.

6        4.    All personal possessions, household furniture and furnishings currently in her

7    possession.

8                              **DIVISION OF DEBTS**

9        IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Frank shall assume

10    the following obligations and hold Tracey harmless therefrom:

11        1.    Indy Mac Bank, Loan No. 12024912XXXX, in the approximate amount of

12    $308,000.00.

13        2.    Franklin Capital Corp., Loan No. 0002132XXXX, in the approximate amount of

14    $45,000.00.

15        3.    His 1999 tax liability, in the approximate amount of $2,000.00.

16        4.    Chase Credit Card, Account No. 5491-0454-8901-XXXX, in the approximate amount

17    of $3,500.00

18        5.    Discover Credit Card, Account No. 6011-0096-8569-XXXX, in the approximate

19    amount of $6,700.00.

20        6.    Any obligations titled in his name only.

21        7.    Any additional obligations incurred by him since August 1, 2004, when the parties

22    separated.

23        IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Tracey shall assume

24    the following obligations and hold Frank harmless therefrom:

25        1.    Any obligations in her name only

26        2.    Any obligations incurred by her since August 1, 2004, when the parties separated.

27

28                              Page 3 of 7

1    IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the parties shall file

2    joint income tax returns for tax years 2000, 2001, 2002, 2003, 2004, and 2005. Should there be a

3    tax liability owed for those years, Frank's 2006 bonus shall be used to satisfy the tax liability.

4    Should Frank's 2006 bonus be insufficient to cover the entire tax liability, his bonus shall be applied

5    to the tax liability and any additional amounts due and owing shall be divided equally between the

6    parties. Should there be any refund due for those tax years, each party shall receive one-half of the

7    refund.

8    IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that each party agrees that

9    if any claim, action or proceeding is brought seeking to hold the other party liable on account of any

10   debt, obligation, liability, act or omission assumed or undertaken by the other party, pursuant to this

11   Decree, such party will, at his or her sole expense, defend the other against any such claim or

12   demand and that he or she will indemnify, defend and hold harmless the other party.

13   IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that if any joint debt,

14   obligation, liability, act or omission creating such liability has been omitted from this Decree and

15   is subsequently discovered, either party may petition the Court for an allocation of that debt,

16   obligation, liability, or liability arising from such act or omission.

17   IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the parties each have

18   verified to the other that they have made a full disclosure of all debts known to them.

19   **PROPERTY AND DEBT EQUALIZATION**

20   IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that in order to equalize

21   the distribution of property, debt and other integrated issues, Frank shall pay Tracey the sum of

22   $73,000.00, payable in four (4) equal payments of $18,250.00 per year. The first payment shall be

23   paid in March of 2007. The second payment shall be paid in March of 2008. The third payment

24   shall be paid in March of 2009. The fourth and final payment shall be paid in March of 2010.

25   Should Frank have the ability to satisfy this obligation sooner, he may do so.

26

27

28                                   Page 4 of 7

## ALIMONY

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that neither party shall pay to the other any sums whatsoever for alimony or spousal support, however titled.

## MISCELLANEOUS

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that it is understood that Frank is in the process of completing the construction of the home located at 6 Yellow Pine Avenue, Mt. Charleston, Nevada 89124. If necessary, Tracey will co-sign any remaining construction loan documents. However, as soon as the construction is complete, Frank shall refinance the home loan, so as to remove Tracey's name and liability thereon.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that each party shall execute any and all legal documents, i.e, quitclaim deeds, vehicle titles, etc. to effectuate the terms of this Decree within thirty (30) days of the entry of the Decree of Divorce.

Should either party fail to execute any of said documents to transfer interest to the other, then it is agreed that this Decree shall constitute a full transfer of the interest of one to the other, as herein provided, and it is further agreed that pursuant to NRCP 70, the Clerk of the Court, Shirley B. Parraguirre, shall be deemed to have hereby been appointed and empowered to sign, on behalf of the non-signing party, any of the said documents of transfer which have not been executed by the party otherwise responsible for such.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Decree of Divorce is deemed to be a final and conclusive settlement between the parties, and that except as herein specified, Frank and Tracey are hereby released and absolved from any and all liabilities and obligations for future acts and duties of the other, and that each party hereby releases the other from any and all liabilities, future accounts, alimony and support or otherwise, or debts or obligations of any kind or character incurred by the other except as hereinbefore provided, it being understood that this Decree of Divorce is intended to settle finally and conclusively the rights of the parties hereto in all respects arising out of their marital relationship except as hereinbefore provided.

Page 5 of 7

1    IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Tracey is hereby

2    restored to her former name of Tracey L. Owen.

3        DATED ____ 2.24.06 ____.

4

5                                                    _____
                                                    DISTRICT COURT JUDGE
6

7    Submitted by:                                  Approved by:

8    _____                        _____
     FRANKLIN A. MITCHELL                            TRACEY L. MITCHELL
9    HC 38 Box 278                                   5400 N. Carson Street
     Mt. Charleston, Nevada 89124                    Carson City, Nevada 89705
10   (702) 872-0780                                  (775) 882-4940
     Plaintiff in Proper Person                      Defendant in Proper Person
11

12

13                        ACKNOWLEDGMENTS

14

15   STATE OF NEVADA      )
                          ) ss:
16   COUNTY OF CLARK      )

17       On this 27 day of ___ Anuary ___, 2006, before me the undersigned Notary Public

18   in and for said County and State, personally appeared FRANKLIN A. MITCHELL, known to me or

19   proven to be the person described in and who executed the foregoing instrument, and who

20   acknowledged to me that he did so freely and voluntarily and for the uses and purposes therein

21   mentioned.

22       Witness my hand and official seal.

23

24                                              _____
                                                NOTARY PUBLIC in and for said County and State
25        TERRI ISAACSON
          Notary Public, State of Nevada
26        Appointment No. 00-5960-01
          My Appt. Expires Oct 22, 2007

27

28                          Page 6 of 7

1  STATE OF NEVADA
                                    ) ss:
2  COUNTY OF Carson City )

3      On this 9th day of February ____, 2006, before me the undersigned Notary Public

4  in and for said County and State, personally appeared TRACEY L. MITCHELL, known to me or

5  proven to be the person described in and who executed the foregoing instrument, and who

6  acknowledged to me that she did so freely and voluntarily and for the uses and purposes therein

7  mentioned.

8      Witness my hand and official seal.

9

10     LYNETTE GILES
       NOTARY PUBLIC
11     STATE OF NEVADA
       My Appt. Exp. May 3, 2008        NOTARY PUBLIC in and for said County and State

12

13     LYNETTE GILES
       NOTARY PUBLIC
14     STATE OF NEVADA
       My Appt. Exp. May 3, 2008
15

16

17

18

19

20

21

22

23

24

25

26

27

28                              Page 7 of 7